MARY MOONEY v. JOHN MORGAN.

**Executors and Administrators—Equitable Lien.**

A son, while executor of his fathers estate, surrendered a title bond of the father for a large tract of land, upon which was due $450.00 and executed his own note therefor. Upon default of payment, the land was sold, and bought by a third party. **Held,** that this would not preclude an heir of the deceased from tendering her pro rata of the unpaid lien of $450 and having a deed made for her distributable portion of the land.

**Same—Trust.**

The son acquired by his act, an equitable lien on the land for his assumed obligation, and held the title for the benefit and use of the heirs, and this trust would descend to any purchaser under him.

APPEAL FROM UNION CIRCUIT COURT.

December 1, 1869.

OPINION OF THE COURT BY JUDGE WILLIAMS:

Mr. M. Lynn, appellant's father, having purchased a tract of land of some 1,333 acres at $600, for which he held a title bond, and having paid only $150 died intestate, when his son John administered upon his estate and by subsequent arrangement with the vendor's agent he surrendered his father's title bind, executed his own note for the remainder of the purchase money due and took a deed to himself containing a lien for the unpaid purchase price.

This note was assigned to McCreery, who obtained judgment and execution against John Lynn and had his property levied on, when John filed a bill in equity enjoining the sale or further proceeding, alleging that there was a defect in the title, that the land had been stricken off to the State for taxes in arrear to the amount of $130. In this bill it sets out that since he received the deed he had bound himself to convey to his brothers and sister, his co-heirs of his deceased father, their proportion of said tract, which in equity they would be entitled to. McCreery answered this bill, and it was litigated for some years when he

died, and Wingate was appointed his administrator; after which John Lynn, the complainant, died, when the suit was abated, but afterwards was revived and consolidated with a suit which Keese had brought against John Lynn's heirs.

After John Lynn's death McCreery's administrator recovered judgment against his heirs and had the land levied on and sold by execution, and John Morgan became the purchaser thereunder; after which Mary Mooney, the appellant, offered her petition setting out the history of these transactions, also that a county court division of the land had been made in John Lynn's lifetime, and 175 acres partitioned to her, she made John Morgan a defendant thereto, and by leave of court, it was filed as her answer, to said consolidated suits, she first having been made a party thereto, and Morgan was made a party to it. She offers to pay her part of her deceased father's indebtedness for the land and seeks o recover it and the legal title from John Morgan, who resists her claim on several grounds. The circuit court dismissed her bill, and of this, as we think, she justly compalins.

These records which through John Morgan, under the execution sale, claims title was a full legal notification to him of the character of John Lynn's title. He only purchased said title and must take it subject to all the charges and equities in the hands of the execution debtor. In a contest between John Lynn and his sister Mary Mooney he could not be heard to say he had paid the debt due from his father for said land and was therefore entitled to it. He had no legal or equitable right to make the land his own by surrendering his father's title bond and taking the deed to himself, especially when he was acting as administrator of his father's estate. He acquired by reason thereof an equitable lien on the land and held the legal title for the use of the heirs, and this relation would continue until by proper legal proceedings he should enforce his lien or by express contract the heirs should severally release their equitable title.

A very public effort is made to prove an estoppel on the part of Mrs. Mooney, by proving that John Morgan desired her to join him in the purchase of the land when it was sold as the property of her brother John's heirs, which she declined, saying she regarded it as already paid for. Had she joined him in this purchase then perhaps she would have been estopped from setting up any adverse title, but as she declined to do so and neither

sought that he should do so nor expressly waived any claim which she had, but rather indicated the contrary. She is by no means estopped. But she is entitled to recover the 175 acres allotted to to her, unless it should be made to appear that it would now be unjust to assign to her this identical land, on the payment, however, of her pro rata part of her father's indebtedness for said land.

Should it do injustice to Morgan because he has improved the land to adjudge her the 175 acres allotted by the county court division to her, then she will be allotted a pro rata part of the land estimating it as in the situation her father left it, and estimating value, quality and quantity. If Morgan, however, has not placed on the 175 acres so allotted to her lasting and valuable improvements, said allotment should be upheld and confirmed to her and he directed to relinquish the legal title to her, it being charged, however, with her part of her father's indebtedness which should be ascertained by a reference to a commissioner. Wherefore, the judgment is reversed for further proceedings as herein directed.

*Huston* for appellant.

*Hughes & Lockett,* for appellee.